UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMER G. G.,<br><br>            Petitioner,<br><br>      v.<br><br>POLLY KAISER, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; and MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator,<br><br>            Respondents. | No.  1:25-cv-01471-KES-SAB (HC)<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS IN PART<br><br>Docs. 1, 2 |

        Petitioner Omer G. G. is a 47-year-old asylum-seeker from Ecuador who entered the United States in August 2024 with his wife and young daughter.[1]  He was detained by immigration officials for several days upon entry, but after immigration officials determined that he was neither a danger nor a flight risk, they released him on humanitarian parole.  On October 15, 2025, Immigration and Customs Enforcement ("ICE") agents re-detained petitioner

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initials, to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

1 when he reported for a check-in.

2       On November 3, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a
3 motion for a temporary restraining order, Doc. 2, arguing that his re-detention without a pre-
4 deprivation hearing violates the Due Process Clause of the Fifth Amendment, that his re-arrest
5 violates the Fourth Amendment, and that ICE failed to follow its regulations governing the
6 termination of his humanitarian parole. For the reasons explained below, the petition for writ of
7 habeas corpus is granted in part.

8 **I.    Background**[2]

9       Petitioner and his family fled Ecuador in 2024 to seek asylum in the United States. Doc. 1
10 at ¶ 8. Petitioner, his wife, and his minor child crossed the southern border on August 19, 2024,
11 and were detained by immigration officials shortly thereafter. *Id.* ¶ A2. Although petitioner was
12 initially processed for expedited removal, immigration officials referred him for a credible fear
13 interview with an asylum officer after he expressed a fear of returning to Ecuador. *See id.* ¶ A4;
14 Doc. 7-1, Jerome Decl. at ¶¶ 6, 8. The asylum officer found that he and his family demonstrated
15 a credible fear of persecution if they returned to Ecuador. Doc. 1 at ¶¶ A3–A4; Doc. 1 at 45–48
16 (credible fear interview checklist); Doc. 1 at 28 (notice to appear). Immigration officials
17 therefore placed petitioner in removal proceedings under 8 U.S.C. § 1229a so that he could
18 pursue his asylum claim, and they served him with a notice to appear in immigration court.
19 Doc. 1 at 28.

20       After being detained for nine days, petitioner and his family were released from detention
21 on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). Petitioner was given an interim
22 notice authorizing parole which stated: "You have been released pending a final decision in your
23 exclusion/deportation hearing." Doc. 1 at 32. The notice also stated that his parole was "valid for
24 one year beginning from the date on this notice," *i.e.*, August 28, 2024, and was set to
25 "automatically terminate upon [his] departure or removal from the United States or at the end of

---

[2] The facts articulated in this section come from petitioner's verified petition and other evidence in the record. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

2

the one year period" unless otherwise extended. *Id.* at 33. His parole was "conditioned on [his] compl[iance] with the terms and conditions of [his] release," including reporting for "every scheduled hearing before the immigration court and every appointment as directed by ICE." *Id.* One such condition of release was his enrollment for monitoring in the "Alternatives to Detention" program. *Id.* at 34; Doc. 7-1, Jerome Decl. at ¶ 9.

By regulation, immigration officials may parole a noncitizen pursuant to 8 U.S.C. § 1182(d)(5)(A) "for 'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizen] present[s] neither a security risk nor risk of absconding." 8 C.F.R. § 212.5(b) (quoting 8 U.S.C. § 1182(d)(5)(A)). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Immigration officials released petitioner on an ankle monitor with instructions to report to the ICE office in Stockton, California. Doc. 1 at ¶ A5, A8. Petitioner followed immigration officials' instructions, and ICE agents removed his ankle monitor at the Stockton ICE office. *Id.* Petitioner was then placed in a different monitoring program where he was required to report for check-ins on a phone application by taking a photo of himself and verifying his location. *Id.*

Petitioner and his family resettled in Modesto, California. *Id.* ¶ A9. His wife filed an application for asylum shortly after their arrival and included petitioner as a derivative individual on the application. *Id.* ¶ A9. Petitioner's first master calendar hearing in immigration court was scheduled for July 30, 2026. *Id.* ¶ 10. Petitioner was approved for work authorization for a period of five years beginning on May 25, 2025. Doc. 1 at 82. He became employed with a landscaping company and a poultry company and financially supported his family. Doc. 1 at ¶ B26. He and his family attended church regularly. *Id.* ¶ A40.

During his time on release, petitioner maintained a clean criminal record, appeared for all in-person check-ins, and kept ICE updated on his address. *Id.* ¶ B25. Respondents assert that petitioner missed eight virtual check-ins via the phone application. Doc. 7-1, Jerome Decl. at ¶ 11. Petitioner maintains that he completed all his check-ins via the phone application, but that

on two occasions, he checked in after the allotted time. Doc. 1 at ¶ A11. Petitioner disputes that he missed any check-in entirely and disputes that he failed to comply in any manner with respect to the remaining six check-ins identified by respondents. *Id.*; Doc. 9 at 7–8. On October 14, 2025, an ICE agent instructed petitioner to appear at the Stockton ICE office; petitioner indicates that the ICE agent told him that the purpose of the visit was to transition him into another check-in program. Doc. 1 at ¶ A12.

On October 15, 2025, petitioner reported to the Stockton ICE office as instructed, and ICE agents arrested him. *Id.* ¶ A13; Doc. 7-1, Jerome Decl. at ¶ 12. Petitioner was then transported to Mesa Verde ICE Processing Center, where he remains detained. Doc. 1 at ¶ A19. His first master calendar hearing, originally scheduled for July 30, 2026, was vacated after he was detained. *Id.* ¶ A14. He appeared for an initial hearing on November 5, 2025 and requested additional time to seek counsel, which the immigration judge allowed. Doc. 7-1, Jerome Decl. at ¶ 14.

**II.    Procedural History**

On November 3, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2. He argues in both of those filings that that the Due Process Clause required that he be provided a hearing prior to any re-detention, that his re-arrest violates the Fourth Amendment, and that his re-arrest was contrary to the Immigration and Nationality Act and its implementing regulations. *See* Docs. 1, 2. The Court set a briefing schedule and provided notice to the parties that it intended to rule directly on the petition for writ of habeas corpus. Doc. 4; *see* Fed. R. Civ. P. 65(a)(2) ("Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing."); *see also* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of [a petitioner's habeas petition] as law and justice require."); *Dzhabrailov v. Decker*, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *4 (S.D.N.Y. May 26, 2020) (considering preliminary injunction and merits of habeas petition simultaneously).

4

1  Respondents filed an opposition to the petition on November 10, 2025.[3]  Doc. 7.  Petitioner filed a
2  reply on November 13, 2025.  Docs. 8, 9.[4]  On November 20, 2025, respondents filed a notice of
3  supplemental authority.[5]  *See* Doc. 10.

### III.  Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

///
///
///
///
///

---

[3] In their opposition, respondents request that the Court "strike and [] dismiss all unlawfully named officials under § 2241." Doc. 11 at 1, n.1.  Such a "request for court order must be made by motion."  *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025).  "[A] request for affirmative relief is not proper when raised for the first time in an opposition."  *Id.*  Respondents' request is therefore denied without prejudice.

[4] Petitioner filed his reply twice.  *See* Docs. 8, 9.  The filings appear to be identical.

[5] The cases cited in respondents' notice of supplemental authority did not address the due process issue presented here; they examined the interpretation of 8 U.S.C. §§ 1225(b) and 1226(a).  *See* Doc. 10 (citing, e.g., *Olalde v. Noem*, No. 1:25-CV-00168-JMD, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025)).

**IV. Discussion**

Petitioner argues that his re-detention violates the Due Process Clause of the Fifth Amendment, the Fourth Amendment, and ICE's regulations governing the revocation of humanitarian parole. *See* Doc. 3. The Court addresses petitioner's due process claim below.[6]

Because civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community, see *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023), petitioner argues that the Due Process Clause bars the government from re-detaining him without first providing a hearing where it must prove he is a flight risk or danger. Doc. 1 at ¶¶ 36–46; Doc. 2 at 7–12. Respondents make two threshold arguments in response.

Respondents argue that petitioner has no due process rights and that his rights are limited to those provided by statute. Doc. 7 at 9 (citing *DHS v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), and *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)). This argument is unpersuasive for two reasons. First, it fails to appreciate the distinction between persons already located inside the United States, like petitioner, and persons attempting to enter the United States, like the petitioners in *Thuraissigiam* and *Landon*. "It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas*, 533 U.S. at 693 (citing *United States v. Verdugo–Urquidez,* 494 U.S. 259, 269 (1990); *Johnson v. Eisentrager,* 339 U.S. 763, 784 (1950)). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful,

---

[6] Petitioner claims that ICE failed to follow its own regulations in revoking his parole, including by not providing notice to him of its intent to do so, and that his re-arrest without new probable cause violates the Fourth Amendment. Petitioner's claim concerning the regulations is without merit because the regulations governing termination of humanitarian parole provide that "[p]arole shall automatically be terminated *without written notice* . . . at the expiration of the time for which parole was authorized . . . ." 8 C.F.R. § 212.5(e)(1). As petitioner's parole expired on August 28, 2025, *see* Doc. 1 at 33, petitioner was not entitled to notice under the regulations.

Petitioner also claims that his re-detention violated the Fourth Amendment. Given that this Order finds that petitioner is entitled to relief on the merits of his due process claim, it need not reach petitioner's Fourth Amendment argument.

1  unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see Hernandez v. Sessions*, 872

2  F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a

3  significant constraint on the manner in which the political branches may exercise their plenary

4  authority.").

5        Second, respondents' argument misconstrues the nature of the challenge that petitioner

6  brings in this case, which is a challenge to his detention. *Thuraissigiam* held that a petitioner who

7  was stopped at the border did not have any due process rights *regarding admission into* the

8  United States. *Thuraissigiam*, 591 U.S. at 107; *see also Landon*, 459 U.S. at 32 ("("[A]n alien

9  seeking initial admission to the United States requests a privilege and has no constitutional rights

10  regarding his application . . . ."). However, petitioner challenges his re-detention without a

11  hearing; he does not challenge in this habeas action any determination regarding his admissibility.

12  *See Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (discussing

13  *Thuraissigiam* and explaining the distinction between a challenge to admission and a challenge to

14  detention); *Hernandez*, 872 F.3d at 981 ("[T]he government's discretion to [detain] non-citizens

15  is always constrained by the requirements of due process.").

16        "Although the Supreme Court has described Congress's power over the 'policies and rules

17  for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive

18  and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process

19  Clause stands as a significant constraint on the manner in which the political branches may

20  exercise their plenary authority"—through detention or otherwise. *Hernandez*, 872 F.3d at 990

21  n.17 (citing *Kleindienst*, 408 U.S. at 769; *Zadvydas*, 533 U.S. at 695). The Due Process Clause

22  protects petitioner, a person inside the United States, from unlawful detention. *See Zadvydas*, 533

23  U.S. at 693.

24        Next, respondents assert that petitioner is mandatorily detained pursuant to 8 U.S.C.

25  § 1225(b)(2)(A), and argue that, in other contexts, the Supreme Court has upheld mandatory

26  detention schemes.[7] Doc. 7 at 8–9 (citing *Demore v. Kim*, 538 U.S. 510 (2003)). In *Demore*, the

27

28  [7] Respondents argue that the Court should require prudential exhaustion because petitioner has not exhausted his administrative remedies by seeking a bond hearing before the immigration

1  Supreme Court upheld the constitutionality of § 1226(c), a mandatory detention provision, on a
2  facial challenge. *Demore*, 538 U.S. at 513. A facial challenge requires a plaintiff to show that a
3  statute is "unconstitutional in every conceivable application." *Foti v. City of Menlo Park*, 146
4  F.3d 629, 635 (9th Cir. 1998). In contrast, an as-applied challenge requires a plaintiff to show
5  only that "the application of the statute to a specific factual circumstance" is unconstitutional.
6  *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). As other courts have explained in
7  considering *Demore*, its conclusion that § 1226(c)'s mandatory detention scheme is constitutional
8  in some of its applications "does not mean that the Court does not have the power to grant
9  petitions for habeas corpus raising *as-applied* constitutional challenges to [] detention without a
10 bond hearing." *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022). Here, petitioner
11 presses an as-applied constitutional challenge: he argues that he has a protected liberty interest
12 under the Due Process Clause due to his release on parole, and that such liberty interest bars the
13 government from re-detaining him without a bond hearing. Doc. 1 at ¶¶ 36–46; Doc. 2 at 7–12.

14     Petitioner's as-applied constitutional challenge is analyzed "in two steps: the first asks
15 whether there exists a protected liberty interest under the Due Process Clause, and the second
16 examines the procedures necessary to ensure any deprivation of that protected liberty interest
17 accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL
18 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490
19 U.S. 454, 460 (1989)).

20     **a. Liberty Interest**

21     A protected liberty interest may arise from a conditional release from physical restraint.
22 *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to

23

---

24 court. Doc. 7 at 10. As respondents argue, however, petitioner is subject to 8 U.S.C. § 1225(b), as he was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A). Those detained under 8 U.S.C.
25 § 1225(b) are not entitled to a bond hearing under the statute. *Jennings v. Rodriguez*, 583 U.S.
26 281, 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."). A request to exhaust administrative remedies would therefore be futile. *Hernandez*
27 *v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) ("[A] court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of
28 administrative remedies would be a futile gesture . . . .").

arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (due process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Petitioner's parole from detention is similar. For over a year, it allowed him to establish ties in the community while pursuing relief in his removal proceedings. He ultimately received employment authorization, was gainfully employed, and supported his family. He and his wife raised their daughter and attended church. These actions were made possible by petitioner's freedom, which is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

Respondents point out that petitioner's parole expired on August 28, 2025, and that they were permitted to re-detain him under the statute and its implementing regulations. *See* Doc. 7 at

7–8. However, petitioner's liberty interest did not expire along with his parole. The interim notice authorizing petitioner's parole stated: "You have been released from service custody *pending a final decision in your exclusion/deportation hearing*." Doc. 1 at 32 (emphasis added). While the interim notice explained that his parole was valid only for one year, it stated that it could be extended. Doc. 1 at 33. Only three months before the one-year expiration date, immigration authorities granted petitioner work authorization for a period of five years. Doc. 1 at 82. Furthermore, the applicable regulations provide that if parole expires, "a noncitizen 'shall again be released on parole' if their 'exclusion, deportation, or removal order cannot be executed within a reasonable time,' [unless] in the opinion of a DHS official 'the public interest requires that the alien be continued in custody.'" *Rodriguez Cabrera v. Mattos*, No. 2:25-CV-01551-RFB-EJY, 2025 WL 3072687, at *2 (D. Nev. Nov. 3, 2025) (quoting 8 C.F.R. § 212.5(e)(2)(i)).[8]

Under the circumstances of this case, where immigration officials provided to petitioner a document stating that he was released "pending a final decision" in his removal proceedings, petitioner had not even had his initial hearing in those removal proceedings, and petitioner was granted a five-year work authorization permit during his year on parole status, petitioner reasonably maintained a liberty interest in his release pending a final removal decision in his immigration case. This conclusion is bolstered by the fact that the applicable regulations provide that if a non-citizen is re-detained after parole expires, they "shall again be released on parole" if their "exclusion, deportation, or removal order cannot be executed within a reasonable time . . . ." 8 C.F.R. § 212.5(e)(1), (e)(2)(i). Here, not only is there is no removal order against petitioner, but petitioner had also not even had an initial hearing in his removal proceedings when agents re-detained him.

In a similar case, the District Court for the Western District of Washington found unpersuasive the government's argument that a noncitizen did not have a liberty interest where

---

[8] Government representations may create a constitutionally protected interest. *Perry v. Sindermann*, 408 U.S. 593, 599–603 (1972). In *Perry*, the Supreme Court found that a non-tenured college professor employed under a series of one-year contracts may have a constitutionally protected interest in being re-hired due to statements made in the college's faculty guide and guidelines promulgated by the university board. *See id.* at 601–03.

1   his one-year parole had expired shortly before he was re-detained. *Ramirez Tesara v. Wamsley*,
2   No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663 (W.D. Wash. Sept. 12, 2025). The court
3   found that the government's "argument does not explain why [immigration authorities] found
4   Petitioner to be eligible for parole on February 7, 2024, but not the following year even after he
5   had established deep ties to the community . . . and timely filed an asylum application." *Id.* at *3.
6   The court held that the petitioner's liberty interest "did not expire along with Petitioner's parole
7   agreement." *Id.*; *see also Rodriguez Cabrera*, 2025 WL 3072687, at *12 (rejecting similar
8   government argument); *Maklad v. Murray*, No. 1:25-CV-00946 JLT SAB, 2025 WL 2299376, at
9   *2, 5–8 (E.D. Cal. Aug. 8, 2025) (reaching same conclusion in similar circumstances). The Court
10  agrees with this reasoning.

11  Respondents also argue that the government had discretion to re-detain petitioner. Doc. 7
12  at 6–7. But while immigration officials may have had discretion over the initial decision to
13  detain or release petitioner, their decision to release an individual from custody creates "an
14  implicit promise" upon which an individual may rely: that his liberty "will be revoked only if [he]
15  fails to live up to the . . . conditions [of release]." *Morrissey*, 408 U.S. at 482. As other courts
16  have found in similar circumstances, "even when ICE has the initial discretion to detain or release
17  a noncitizen pending removal proceedings, after that individual is released from custody she has a
18  protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025,
19  1032 (N.D. Cal. 2025); *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("the
20  government's discretion to incarcerate non-citizens is always constrained by the requirements of
21  due process").

22  The Court finds that petitioner has a protected liberty interest in his release. *See*
23  *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) (recognizing that "the
24  liberty interest that arises upon release [from immigration detention] is *inherent* in the Due
25  Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal.
26  June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong
27  liberty interest). The Court must therefore determine what process is due before the government
28  may terminate his liberty.

### b. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).[9]

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for over a year, and he established ties in the community, gained lawful employment, and supported his family. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690;

---

[9] Respondents note that the Supreme Court has never utilized the *Mathews* factors in evaluating a Due Process claim by a noncitizen, Doc. 11 at 7 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)), but respondents analyze the *Mathews* factors without proposing an alternative test. Courts in this circuit regularly employ the *Mathews* factors to evaluate the Due Process argument that petitioner makes here. *See e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025). The Court does not see a reason to depart from this practice. As the Ninth Circuit has noted, "*Mathews* remains a flexible test" that accounts for the competing interests of an individual detainee and the government. *Rodriguez Diaz*, 53 F.4th at 1206–07.

*Padilla*, 704 F. Supp. 3d at 1172. While respondents contend that petitioner violated the terms of his release by missing eight check-ins, Doc. 7-1, Jerome Decl. at ¶ 11, petitioner states that he completed all his check-ins via the phone application, but that on two occasions, he checked in after the allotted time, Doc. 1 at ¶ A11. In a similar case, where a noncitizen had missed two appointments with ICE agents, the District Court for the Western District of Washington found: It does not "necessarily follow that Petitioner can be detained for those violations without a hearing. That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025). Similarly, here, as there were no procedural safeguards to determine if petitioner's re-detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025); *see also Morrissey*, 408 U.S. at 483 (noting that "the State has an *overwhelming interest* in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has *no interest* in revoking parole without some informal procedural guarantees."). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing.

### c. Bond Hearing and Burden of Proof

The Court finds that a post-deprivation bond hearing is appropriate in the circumstances of this case. The parties dispute whether the burden of proof should fall on petitioner or the government at the bond hearing. The Court finds that in this context the burden is more appropriately placed on the government. *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1107

13

(W.D. Wash. 2019); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *8 (E.D. Cal. July 25, 2025).

In *Singh v. Holder*, the Ninth Circuit held, in the context of hearings provided for those detained under § 1226(c), that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) (explaining that *Singh* was based on general principles of due process). "Because it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection." *Id.* at 1203–04 (quoting *Addington v. Texas,* 441 U.S. 418, 427 (1979)). These same concerns are present here.

The Ninth Circuit later extended these principles to bond hearings for those detained under § 1225(b) and § 1231(a). *See Diouf v. Napolitano*, 634 F.3d 1081, 1082 (9th Cir. 2011); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("*Rodriguez*"). Although the Supreme Court subsequently held in *Jennings* that the constitutional avoidance canon could not be used to read a bond hearing requirement into the statute, it did not address an as-applied constitutional due process challenge. *Jennings*, 583 U.S. at 304–06, 312 ("Because the Court of Appeals . . . had no occasion to consider respondents' constitutional arguments on their merits[,] . . . we do not reach those arguments."). *Singh* "relied on the Due Process Clause in determining" who should bear the burden of proof at those bond hearings. *Rodriguez Diaz*, 53 F.4th at 1202; *see Singh*, 638 F.3d at 1203–06. The issue of the burden of proof at a hearing required by due process therefore appears to remain governed by *Rodriguez* and its extension of *Singh*'s requirements to bond hearings for § 1225(b) detainees. *See Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *10 (W.D. Wash. Aug. 7, 2025) (applying *Singh* in § 1225(b) case); *Banda*, 385 F. Supp. 3d at 1107 (same); *Abdul-Samed*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *8 (same).

14

1    The government points to *Rodriguez Diaz*, which held that § 1226(a), which places the burden of proof on the detainee at a bond hearing, was constitutionally adequate. *Rodriguez Diaz*, 53 F.4th at 1210. But "[s]ection 1226(a) offers substantial procedural protections to detained persons," *id.* at 1194, which cannot be said of § 1225(b). In that regard, § 1225(b) is more like § 1226(c), as both mandate detention. Accordingly, the burden of proof standard highlighted in *Singh* governs this case.[10]

### V. Conclusion and Order

Accordingly, the petition for writ of habeas corpus, Doc. 1, is GRANTED in part. Respondents are ENJOINED AND RESTRAINED from detaining petitioner unless they demonstrate, within seven (7) days of the date of this Order, by clear and convincing evidence at a bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified. Respondents shall file a status report within ten (10) days of the date of this Order, confirming whether a bond hearing was held and, if so, the outcome of that hearing.

Petitioner's request to enjoin his removal or transfer outside this District while these proceedings are pending is DENIED as moot.

The Clerk of Court is directed to close this matter.

IT IS SO ORDERED.

    Dated:   November 21, 2025                          _____
                                                         UNITED STATES DISTRICT JUDGE

---

[10] The government also argues that *Zadvydas* placed the burden on the petitioner to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" before making "the government respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. But the cited portion of *Zadvydas* outlined the appropriate procedure to be used at a preliminary showing on a challenge to prolonged detention, not whether the burden of proof should fall on the detainee or the government at a bond hearing to determine whether the detainee should be re-detained, as a flight risk or danger to the community based on changed conditions, after an extended period of release. *See id.*

15